In the Matter of the Liquidation of NATIONAL SURETY COMPANY. J. F. M. STEWART, Owner of the Canadian Steam Tug " MURRAY STEWART," Claimant, Appellant; LOUIS H. PINK, Superintendent of Insurance of the State of New York, as Liquidator of NATIONAL SURETY COMPANY, Respondent.

(Claim No. C. B. 7985.)

First Department, December 23, 1938.

*Howard H. Yocum* of the Philadelphia bar, of counsel *pro hac vice* [*Henry M. Hewitt* and *John T. Casey* with him on the brief; *Haight, Griffin, Deming & Gardner*, attorneys], for the appellant.

*William F. Roantree* of counsel [*William A. J. Sheehan* with him on the brief; *Edward F. Keenan*, attorney], for the respondent.

TOWNLEY, J. In October, 1919, the claimant Stewart, owner of the steam tug *Murray Stewart*, let it to the Cuban-Atlantic Transport Corporation (hereinafter called Cuban-Atlantic) under

a charter party which called for the payment of rent at the rate of $10,000 a month. The National Surety Company gave a charter party bond for $10,000 which in effect guaranteed the payment of one month's rent. On March 5, 1920, the hirer was in default for $16,235 in rent and other charges. Stewart proceeded to litigate this claim in Admiralty in Pennsylvania and attached Cuban-Atlantic's funds in the hands of third parties. This action is called Cause No. 19. Cuban-Atlantic thereupon procured a bond for $20,000 from the National Surety Company on March 24, 1920, to dissolve the attachment. The bond ran in favor of Stewart and was conditioned as follows: " Now, if the said claimant [Cuban-Atlantic] shall well and truly abide by all orders, interlocutory or final of the said Court, and of any Appellate Court in which the said suit may hereafter be depending, and shall fulfill and perform the Judgment or Decree which may be rendered in the premises, and also pay all such costs and charges as shall be ordered and adjudged to be paid on its part, then this stipulation shall be void; otherwise in force, and execution may issue, by virtue thereof, at one and the same time against any or all the parties to this stipulation."

Thereafter, Cuban-Atlantic libeled the tug on its own claim (Cause No. 45 of 1920) in Admiralty and demanded $50,000 damages for breach of the charter party by the owner. The National Surety Company was prepared to give a bond for $50,000 in this action but was never called upon to do so. On October 25, 1920, Cuban-Atlantic was adjudicated a bankrupt, and a receiver, one Hupper, who was later made trustee, was appointed.

In the bankruptcy proceeding Stewart filed a claim for $62,858.31, which included the claim in Cause No. 19. The prosecution of Cause No. 19 was not actually prevented by injunction, but was suspended by agreement with the trustee in bankruptcy pending the collection of Cuban-Atlantic's only substantial asset, which consisted of a claim against the United States. This litigation was finally terminated in 1932 and resulted in a recovery of some $95,000.

In 1932, after the collection of this amount, negotiations looking toward a settlement of Stewart's claim against Cuban-Atlantic and the cross-claim against Stewart were undertaken by the trustee, Stewart and the surety company. An agreement was finally reached under which Stewart's claim against the Cuban-Atlantic was fixed at the amount of $26,235 and the Cuban-Atlantic's cross-claim for breach of the charter party was discontinued. This agreement was stated in a letter which Yocum, counsel for Stewart, wrote to Saul, the Philadelphia counsel for the surety company, on November 21, 1932.

The relevant parts of this letter read as follows:

" (3) If no adjustment is effected between the owners of the Tug ' Murray Stewart ' and the National Surety Company in the suit by the owners of the Tug ' Murray Stewart ' against the Cuban-Atlantic Transport Corporation, No. 19 of 1920, * * * the National Surety Company shall have the right, to the extent of any recovery against the National Surety Company, to set off such damages as the Cuban-Atlantic Transport Corporation may be entitled to recover by reason of any breach of charter party on the part of the Tug ' Murray Stewart ' and her owners, and the Statute of Limitations shall not be interposed as a bar against any right of set off, provided, however, that the set-off, if proven, shall be limited to such recovery as the owners of the Tug ' Murray Stewart ' may have against the National Surety Company, and shall not give rise to any counterclaim in excess of such recovery, or to any recovery for the benefit of the Cuban-Atlantic Transport Corporation.

" (4) The National Surety Company shall be entitled to deduct from any net recovery by the Tug ' Murray Stewart,' and/or her owners, upon either the $10,000 bond or the $20,000 bond, such dividends as may have been received by the owners of the Tug ' Murray Stewart ' on the respective claims of $10,000 and of $16,235 allowed in the bankruptcy proceedings."

After the receipt of this letter Saul wrote to the trustee in bankruptcy of the Cuban-Atlantic as follows:

" The National Surety Company has no objection to the allowance of the claim of the owners of the Tug ' Murray Stewart ' against the bankrupt estate of the Cuban-Atlantic Transport Corporation in the sum of $26,235.00, or to the discontinuance of the suit by the said bankrupt estate against the Tug ' Murray Stewart ' and her owners.

" An arrangement has been effected between the National Surety Company and the owners of the Tug ' Murray Stewart ' in consequence whereof the National Surety Company waives any claim against the bankrupt estate in connection with any matter arising out of any contracts between the Cuban-Atlantic Transport Corporation and the Tug ' Murray Stewart ' and/or her owners."

The surety company by this agreement consented that the amount of Stewart's claim against Cuban-Atlantic should be fixed in the bankruptcy proceedings and approved the amount. The liability of the surety company was no longer contingent. The only question remaining was the question of how much, if anything, should be allowed on the claim of the Cuban-Atlantic against it and the proper allocation of the dividends from the bankrupt. The surety

by this arrangement became the defendant in any suit in place of and with all the rights of Cuban-Atlantic. This fact is established by its assuming all Cuban-Atlantic's rights by way of setoff arising out of Cuban-Atlantic's suit against Stewart for breach of the charter party. The condition of the bond that required the surety to pay the amount that Cuban-Atlantic " shall be ordered and adjudged to be paid on its part" had been met. The order in bankruptcy had, by agreement of the parties, been substituted for a judgment in the action and its default had been established by its inability to make payment beyond the amount declared.

The order should be reversed, with twenty dollars costs and disbursements, and the matter referred back to the referee for determination of the amount of the claim to be allowed.

DORE and CALLAHAN, JJ., concur; COHN, J., dissents and votes for affirmance.

Order reversed, with twenty dollars costs and disbursements to the appellant, and the matter referred back to the referee for determination of the amount of the claim to be allowed. Settle order on notice.